# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

VENUE: SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

AVELINO RAMIREZ,

FILED
OCT 31 2024
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DEFENDANT(S). CR 24-0564 WHO

## INDICTMENT

18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation

A true bill.

_/s/ Foreperson of the Grand Jury_
                                          Foreman

Filed in open court this __31st__ day of

October, 2024.

_____[signature]_____
                                          Clerk

Bail, $ No Process  Summons

_[signature] 10/31/2024_
HON. KANDIS A. WESTMORE, U.S. Magistrate Judge

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

**FILED**

OCT 31 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANICSCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 24-0564 WHO |
| Plaintiff, | VIOLATIONS: |
| v. | 18 U.S.C. § 1343 – Wire Fraud;<br>18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation |
| AVELINO RAMIREZ, | |
| Defendants. | SAN FRANCISCO VENUE |

INDICTMENT

The Grand Jury charges:

At all times relevant to this Indictment:

<u>The Scheme to Defraud</u>

1.      Beginning at a date unknown to the grand jury but no later than October 18, 2021, and continuing through a date unknown to the grand jury, but to at least February 27, 2024, defendant Avelino RAMIREZ knowingly devised, intended to devise, and carried out a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. From approximately 2013 to September 2022, RAMIREZ was an Investigative Services Unit ("ISU") K-9 Officer with the California Department of Corrections and Rehabilitation ("CDCR") at San Quentin State Prison ("SQSP") located in Marin

INDICTMENT

County within the Northern District of California. In September 2022, RAMIREZ was promoted to K-9 Sergeant for the Northern Region of California, was assigned to the California Medical Facility ("CMF") in Vacaville, California, and began working at the prison in November 2022.

2. CDCR employs canine (K-9) units throughout the state to combat the introduction of illegal drugs and contraband into CDCR facilities and to reduce the overall level of contraband and criminal activity within the inmate population, enhancing the safety and security of the institution and public at-large. A K-9 unit is a law enforcement officer paired with a service dog to perform the duties of a general police officer. A police dog, also known as K-9, is a dog specifically trained to assist members of law enforcement. California state prisons regularly conduct searches of prison facilities to identify and seize contraband and K-9s are often used in connection with those searches, as they are trained to locate contraband. If contraband drug items are discovered under the control of an inmate, the drugs are sent to the California Department of Justice ("DOJ") for further analysis, such as drug identification confirmation or to determine the extent of criminal charges to bring against an inmate. However, if contraband is recovered in an uncontrolled area of a prison, which is defined as a common area within the prison facility not directly linked or associated with an inmate, then the contraband is not typically sent to the DOJ for further analysis. As an ISU officer and sergeant, RAMIREZ was both knowledgeable about, and received training on, evidence processing and CDCR drug evidence testing protocols.

As part of the scheme to defraud:

3. RAMIREZ engaged in a scheme wherein he smuggled and then planted contraband in uncontrolled areas of SQSP and CMF and then pretended to discover said contraband. RAMIREZ did so in order to hold himself out as a successful K-9 officer with the hope that it would help him obtain a promotion to K-9 sergeant and also to fraudulently inflate his salary through overtime pay for report writing following these false discoveries. Contraband items RAMIREZ planted included drugs, drug paraphernalia, tobacco, cell phones, and weapons.

4. In order to hold himself out as a successful K-9 officer and handler, RAMIREZ planted and subsequently discovered contraband in uncontrolled areas of the prisons, thereby vastly outperforming his fellow ISU officers. For example, focusing on contraband packages, in 2021, SQSP

INDICTMENT                                    2

reports indicate that there were 23 contraband packages recovered in uncontrolled areas of SQSP. Of the 23 recoveries, RAMIREZ recovered 13 of the contraband packages. The next highest number of contraband items recovered by a single correctional officer in uncontrolled areas at SQSP in 2021 was 2. Eight other correctional officers each only recovered 1 contraband package from uncontrolled areas at SQSP in 2021. This was a significant increase from 2020, in which RAMIREZ recovered 3 contraband packages in uncontrolled areas at SQSP and there was only a total of 5 discoveries during a four-month period between October 2020 and December 2020. In 2022, there were 28 contraband drug items recovered in uncontrolled areas at SQSP. Of the 28 recoveries, RAMIREZ discovered a total of 20. The next highest number of contraband items recovered by a single correctional officer in 2022 at SQSP was 2.

5. Preceding RAMIREZ's transfer to CMF in November 2022, only 1 contraband package had been recovered in an uncontrolled area of CMF that year. After RAMIREZ transferred to CMF and began working in November 2022, there was a large uptick in contraband recovered in the uncontrolled areas of the prison with discoveries on November 30 and December 20, 2022, and February 14, February 22, March 9, March 26, June 30, August 1, October 5, November 3, and November 21, 2023. Following the irregular contraband discoveries since RAMIREZ's transfer to CMF, at the end of November 2023, supervisors within the prison temporarily suspended searches of uncontrolled areas. Searches resumed after RAMIREZ was removed from his position at CMF in February 2023, and there was a dramatic reduction in drug contraband discoveries in uncontrolled areas of the prison.

6. Typically, the contraband RAMIREZ planted and then dishonestly discovered inside the prison was methamphetamine (or substances resembling methamphetamine) and marijuana, although he also planted other types of contraband such as cocaine, drug paraphernalia, tobacco, other electronic devices, and weapons.

7. In furtherance of his scheme and artifice, RAMIREZ used a variety of means and methods, including but not limited to the following:

    a. RAMIREZ planted packages in the prisons consisting of a marijuana shake, which is marijuana comprised of bits of leaves, stems, and trimmings that fall from the buds. At times, RAMIREZ planted marijuana mixed with foxtails and lawn trimmings.

INDICTMENT                                                    3

b.    RAMIREZ often packaged the contraband he planted in the prisons in Ziplock sandwich bags with a green seal, latex gloves, black electrical tape, tinfoil, or clear plastic.

c.    RAMIREZ took advantage of his knowledge of the CDCR drug testing policy of contraband recovered in uncontrolled areas and packaged the drugs he smuggled in such a way that they would often pass a field test and therefore both count towards a discovery statistic for which he would receive credit and allow him to obtain overtime pay to write and file a report following the incident. RAMIREZ planted the drugs in uncontrolled areas believing that they would not be sent to a lab in an effort to avoid detection and conceal his scheme.

d.    At times, RAMIREZ directed other officers to search specific uncontrolled areas in an effort to conceal his involvement in the scheme.

e.    To further his scheme, RAMIREZ maintained, in the basement of his house, a jar of marijuana shake, latex gloves, salt, sugar, electrical tape, cellphones wrapped in plastic in the rafters, electrical tape, tinfoil, and Ziplock bags with a green seal.

f.    RAMIREZ requested and received overtime pay following his discoveries in uncontrolled areas. For example, RAMIREZ claimed he discovered methamphetamine packaged in blue latex in an uncontrolled area at SQSP on January 21, 2022, which field-tested positive for methamphetamine. Following that discovery, RAMIREZ requested and received 7 hours of overtime, during which time he wrote and signed a report that was 8 lines long, wherein he falsely claimed he discovered the methamphetamine, and he received approximately $503.51 of overtime pay at approximately $71.93 per hour. This was reflected in RAMIREZ's paycheck for $3,455.41, which was wired to his bank account on or about February 11, 2022.

g.    In another example, on March 23, 2022, RAMIREZ planted 5 bindles of methamphetamine wrapped in a blue latex material consistent with the fingers of latex gloves in a yard, which is an uncontrolled area of SQSP. After RAMIREZ planted the drugs, he then called another correctional officer over to search the area, claiming his K-9 indicated the presence of narcotics. While the methamphetamine field-tested positive, subsequent lab testing revealed that the purity was approximately 1%. Following the fraudulent discovery, RAMIREZ requested and received 8 hours of overtime for report writing, during which time he wrote and digitally signed a report that was 7 lines

long, wherein he falsely claimed he discovered the methamphetamine. He received approximately $577.20 of overtime pay at approximately $72.15 per hour, which was reflected in RAMIREZ's paycheck wired to his bank account on or about April 13, 2022, for $1,857.84.

       h.     In another example, RAMIREZ claimed that he discovered marijuana packaged in black electrical tape in an uncontrolled area at SQSP on May 12, 2022. The marijuana appeared to be a marijuana shake. Following that discovery, RAMIREZ requested and received 6.5 hours of overtime for report writing, during which time he wrote and digitally signed a report that was 8 lines long, wherein he falsely claimed he discovered the marijuana. He received approximately $467.55 of overtime pay at approximately $71.93 per hour, which was reflected in RAMIREZ's paycheck wired to his bank account on or about June 13, 2022, for $3,816.00.

       8.     From October 18, 2021, through February 27, 2024, when RAMIREZ claimed overtime related to searches where contraband was recovered, RAMIREZ received anywhere from approximately $140 to $570 per instance, resulting in overtime pay totaling approximately $8,200.

COUNTS ONE THROUGH THREE: (18 U.S.C. § 1343 – Wire Fraud)

       9.     Paragraphs 1 through 8 of this Indictment are re-alleged and incorporated as if fully set forth here.

       10.     Beginning no later than October 18, 2021, and continuing through at least February 27, 2024, in the Northern District of California and elsewhere, the defendant,

AVELINO RAMIREZ,

knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

The Use of the Wires

       11.     On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud and attempting to do so, the defendant,

AVELINO RAMIREZ,

did transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire

INDICTMENT     5

communication, certain writings, signs, signals, pictures, and sounds, specifically:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| ONE | February 11, 2022 | Direct deposit via Automated Clearing House transfer of $3,455.41 to Police Credit Union checking account ending in x5143 |
| TWO | April 13, 2022 | Direct deposit via Automated Clearing House transfer of $1,857.84 to Police Credit Union checking account ending in x5143 |
| THREE | June 13, 2022 | Direct deposit via Automated Clearing House transfer of $3,816.00 to Police Credit Union checking account ending in x5143 |

Each in violation of Title 18, United States Code, Section 1343.

FORFEITURE ALLEGATION: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

12. The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

13. Upon conviction for any of the offenses set forth in this Indictment, the defendant,

AVELINO RAMIREZ

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, including but not limited to forfeiture money judgment in the amount of such proceeds.

13. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

14. All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED: October 31, 2024                                    A TRUE BILL.


/s/ Foreperson of the Grand Jury
FOREPERSON

ISMAIL J. RAMSEY
United States Attorney


/s/ Benjamin K. Kleinman
BENJAMIN K. KLEINMAN
Assistant United States Attorney

INDICTMENT                                    7

AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
SAN FRANCISCO DIVISION

**OFFENSE CHARGED**

18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: 20 years' Imprisonment;
3 years' Supervised Release;
$250,000 Fine, and
Forfeiture.

**DEFENDANT - U.S.**

▶ AVELINO RAMIREZ

DISTRICT COURT NUMBER
**CR 24-0564 WHO**

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: **ISMAIL J. RAMSEY**
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): **BENJAMIN K. KLEINMAN**

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**FILED OCT 31 2024**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction       } ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution _____

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT   Bail Amount: No Bail

If Summons, complete following:
☒ Arraignment  ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:
343 Mesa Verde Street, Vallejo, CA 94589

Date/Time: November 22, 2024 at 10:30am   Before Judge: Thomas S. Hixson

Comments:

**FILED**
OCT 31 2024
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## CRIMINAL COVER SHEET

*Instructions:* Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.

**CASE NAME:** USA v. AVELINO RAMIREZ

**CASE NUMBER:** CR 24-0564 WHO

| Field | Response |
|---|---|
| Is This Case Under Seal? | Yes ☐   No ✓ |
| Total Number of Defendants: | 1 ✓   2-7 ☐   8 or more ☐ |
| Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326? | Yes ☐   No ✓ |
| Venue (Per Crim. L.R. 18-1): | SF ✓   OAK ☐   SJ ☐ |
| Is this a potential high-cost case? | Yes ☐   No ✓ |
| Is any defendant charged with a death-penalty-eligible crime? | Yes ☐   No ✓ |
| Is this a RICO Act gang case? | Yes ☐   No ✓ |

**Assigned AUSA (Lead Attorney):** Benjamin K. Kleinman

**Date Submitted:** 10/31/2024

**Comments:**

Form CAND-CRIM-COVER (Rev. 11/16)

RESET FORM    SAVE PDF